IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUANITA CARDONA, et al.,           §
                                   §
            Plaintiffs,            §
                                   §   Civil Action No. 3:09-CV-0833-D
VS.                                §
                                   §
LIFE INSURANCE COMPANY             §
OF NORTH AMERICA,                  §
                                   §
            Defendant.             §

MEMORANDUM OPINION
AND ORDER

Plaintiffs' motion to remand and defendant's motion to dismiss present questions concerning diversity jurisdiction and ERISA[1] preemption. For the reasons that follow, the court denies plaintiffs' motion to remand, grants in part and denies in part defendant's motion to dismiss, and allows plaintiffs to replead to state claims under ERISA § 502(a)(1)(B).

I

Plaintiffs Juanita Cardona ("Cardona") and Xavier Medina ("Medina") sue defendant Life Insurance Company of North America ("LINA") to recover insurance proceeds as the beneficiaries of a group accident policy ("Policy") that LINA issued to the employer of John Medina ("John"), deceased. John was killed in a hit-and-run accident while walking on a freeway access ramp. At the time of his death, John was employed by a division of Mueller Group,

_____

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Inc. ("Mueller"), who procured the Policy for the benefit of its employees and paid part of the premiums.  Following John's death, Cardona and Medina submitted a claim for Policy benefits, which LINA denied based on Policy exceptions that it contended voided coverage.

Cardona and Medina sued LINA in Texas state court alleging claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (Vernon 2002), and violations of the Texas Insurance Code.  LINA removed the case to this court based on diversity of citizenship and complete ERISA preemption.  It also maintained in its notice of removal that there is federal question jurisdiction because plaintiffs' breach of contract claim is transformed into a federal claim by means of complete preemption under ERISA § 502, 29 U.S.C. § 1132.  Plaintiffs move to remand the case to state court,[2] and LINA moves under Fed. R. Civ. P. 12(b)(6) to dismiss the action for failure to state a claim, contending that plaintiffs' state-law claims are completely preempt under ERISA.

---

[2]Although plaintiffs move to abstain and remand, their motion only presents arguments in support of remanding the case.  Because plaintiffs do not argue for abstention, and because there is no apparent reason for the court to abstain, the court will only address whether the case should be remanded.

II

The court first considers whether the case was removable based on diversity of citizenship.

A

28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  The district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"  28 U.S.C. § 1332(a)(1).

Because LINA removed this action from state court, it has the burden of overcoming an initial presumption against subject matter jurisdiction and of establishing that removal is proper.  *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "In general, defendants may remove a civil action if a federal court would have had original jurisdiction."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)).  "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that

- 3 -

they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971).  Therefore, the removal statute is to be strictly construed.  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).  And "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."  *Frank*, 128 F.3d at 922.

"The merit of [defendant's] position turns on whether it has established 'both that the parties are diverse and that the amount in controversy exceeds $75,000.'"  *In re Enable Commerce, Inc.*, 256 F.R.D. 527, 530 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003)).  The party seeking removal must prove the facts establishing federal jurisdiction by a preponderance of the evidence.  *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  Furthermore, "[u]nder general jurisdictional principles as well as under removal principles, some subsequent developments in a case do not affect a

court's prior-existing jurisdiction."[3] *IMFC Prof'l Servs. of Fla.,
Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 157 (5th Cir.
Unit B 1982); *see also Garcia v. Boyar & Miller, P.C.*, 2007 WL
1556961, at *2 (N.D. Tex. May 30, 2007) (Fitzwater, J.).

B

In its notice of removal, LINA contends that there is complete
diversity of citizenship.  Plaintiffs do not dispute this fact in
their motion to remand.  LINA has therefore satisfied its burden of
proving that the parties are completely diverse citizens.

C

LINA also asserts that the amount in controversy exceeds the
minimum $75,000 threshold.   The face value of the Policy is
$25,000.  In their state court petition, plaintiffs sue for treble
economic damages, treble damages for medical expenses and lost
wages, treble mental anguish damages, interest, costs, and
attorney's fees.    Although, in accordance with Texas state
procedure,[4] the petition does not plead specific damages amounts,
plaintiffs' pre-suit demand letter stated that mental anguish
damages totaled "at least $50,000," and actual damages totaled "at

---

[3]Because post-removal developments do not impact the question
whether a district court has subject matter jurisdiction, the
court's analysis of diversity jurisdiction is unaffected by its
subsequent analysis of claim preemption under ERISA.  The diversity
jurisdiction analysis is based only on the nature of the claims as
they existed at the time of removal.

[4]*See Allen,* 63 F.3d at 1335 (citing Tex R. Civ. P. 47).

least $100,000." D. July 8, 2009 App. 43—44.[5] Plaintiffs do not disavow these estimates.

"To establish jurisdiction when the plaintiff's state court petition does not allege a specific amount of damages, as in the instant case, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000." *Kilduff v. First Health Benefits Adm'rs Corp.*, 2006 WL 1932348, at *2 (N.D. Tex. July 10, 2006) (Fish, C.J.); *see also De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). Therefore, absent explicit damages pleadings, "the removing party can adduce facts that support a finding of the requisite amount." *Enable Commerce*, 256 F.R.D. at 532.

There are two ways that such a showing can be made. First, a court may decide that it is "facially apparent" from the petition that the claims fall above the jurisdictional threshold. *Allen*, 63 F.3d at 1335. Second, the removing party can prove the amount in controversy by "setting forth the facts in controversy——preferably in the removal petition, but sometimes by affidavit——that support a finding of the requisite amount." *Id.* This second type of showing has been said to resemble "summary-judgment-type evidence." *Id.* at 1336. "[I]n addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount

---

[5]For clarity, and because the parties have each filed a motion that is pending for decision, the court will cite the appendix by the date filed.

in controversy when the insurer could be liable for those sums under state law are *inter alia* penalties, statutory damages, and punitive damages—just not interest or costs." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). One district court in this circuit has noted: "in practice [the Fifth Circuit] has looked to pre-suit demand letters to determine whether the amount in controversy was within the jurisdictional limit." *King v. Ameriprise Fin. Servs., Inc.*, 2009 WL 1767641, at *3 (S.D. Tex. June 19, 2009).

LINA argues that it is facially apparent that the amount in controversy requirement is met in this case.  While the court recognizes that plaintiffs' demand for the various damage calculations, statutory penalties, and attorney's fees is contained within the state court petition, LINA's assertion ignores the fact that the value of the Policy and the dollar amount for each of these damage claims is not ascertainable from the petition itself. Thus looking merely at the "face" of the pleading, it is not clear that the amount-in-controversy threshold is met.

But the court need not determine whether the jurisdictional amount has been satisfied under the "facially apparent" standard because there is sufficient "summary-judgment-type" evidence to satisfy LINA's burden of proof.  Plaintiffs have admitted—outside of their petition—that the value of the Policy is $25,000. Combining this fact alone with the petition's demand for treble

damages under Tex. Ins. Code Ann. § 541.152 (Vernon 2009), satisfies the minimum amount, because actual plus treble damages equals $100,000. Additionally, plaintiffs' pre-suit demand letter contained damages estimates that far exceed the jurisdictional minimum, even without taking treble damages into account. Plaintiffs do not dispute these facts in their motion to remand.[6] Thus LINA has proved by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional minimum.

D

Accordingly, because LINA has established that the court has diversity jurisdiction, plaintiffs' motion to remand is denied.[7]

III

The court now considers LINA's motion to dismiss under Rule 12(b)(6).

A

LINA maintains that plaintiffs' state-law claims are preempted by ERISA. In its notice of removal, LINA asserted that plaintiffs' breach of contract claim was *completely* preempted by ERISA § 502. In its motion to dismiss, however, LINA posits that plaintiffs'

---

[6]Plaintiffs did not file a reply brief in support of their motion to remand.

[7]Because the court has determined this case was removable based on diversity, its discussion in the following sections of ERISA preemption relates to LINA's motion to dismiss, although the court's conclusion below that plaintiffs' breach of contract claim is completely preempted under § 502 would also support denying plaintiffs' motion to remand.

breach of contract and other state-law claims are subject to *conflict* preemption under ERISA § 514.  Plaintiffs contest all of LINA's preemption arguments.[8]

B

Considering LINA's shifting focus from *complete* to *conflict* preemption, it is necessary to distinguish between "conflict," sometimes called "ordinary," preemption, and "complete" preemption and to understand how both types of preemption operate.

Conflict preemption finds its source in ERISA § 514.  "[T]he provisions of this subchapter . . . shall supersede any and all State laws insofar as then may now or hereafter relate to any [ERISA] plan[.]"  29 U.S.C. § 1144(a).  Preemption of state-law claims under § 514 "provides an affirmative federal defense to a state-law claim."  *Westfall v. Bevan*, 2009 WL 111577, at *4 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.) (*citing Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337 (5th Cir. 1999)).  Thus if a state-law claim relates to an ERISA plan——whether asserted in state or federal court——ERISA supersedes state law and the claim must be dismissed.[9]  *See, e.g., Menchaca v. CNA Group Life Assurance Co.,*

---

[8]The parties' arguments regarding the ERISA preemption issues are spread throughout their various motions and briefs.  This memorandum opinion and order addresses all relevant arguments presented in the briefing.

[9]This assumes that the state-law claim does not qualify for one of the statutory "safe-harbor" exceptions to § 514, which are discussed below.

2009 WL 2512859, at *3—*4 (5th Cir. Aug. 18, 2009) (per curiam) (upholding district court dismissal of state-law claims based on § 514 preemption). "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003) (en banc).

In contrast with conflict preemption, complete preemption under ERISA § 502——the statute's civil-enforcement provision——provides more than a defense.[10] A state-law claim that is completely preempted under § 502 is transformed into a new federal claim. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). "Section 502(a) complete preemption is a slight misnomer, for it does not involve traditional preemption analysis." *Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir. 2002). Instead, § 502 asks "whether the state law duplicates or 'falls within the scope of' an ERISA § 502(a) remedy." *Id.* (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). It is well established that Congress intended ERISA to fully occupy the field of disputes involving employee benefit plans. *See Westfall*, 2009

---

[10]The pertinent section in this case is § 502(a)(1)(B), which preempts all suits involving ERISA-governed plans "brought by a participant or beneficiary to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan."

WL 111577, at *3.   "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, 542 U.S. at 209.   "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210.

Thus while both conflict preemption and complete preemption displace state-law claims, they result in different outcomes. Conflict preemption under § 514 is a defense and leads to a dismissal of the state-law claim.  Complete preemption under § 502, however, replaces the state-law claim with a federal claim.  It eliminates the state-law claim, but it does not lead to dismissal of the federal claim.

Although § 502 preemption is distinct from a "traditional preemption analysis" under § 514, it is not surprising that many, if not most, state laws that duplicate § 502 remedies would also "relate to" an ERISA plan within the meaning of § 514.  The potential for this frequent overlap between §§ 502 and 514 led the Fifth Circuit at one point to hold that satisfying § 514 was a necessary prerequisite to demonstrating complete preemption under

§ 502. *See Arana*, 338 F.3d at 439 ("This circuit has not been content to require only § 502 complete preemption for federal jurisdiction, requiring § 514 conflict preemption as well."). That two-part test was overturned in *Arana*, where the Fifth Circuit made clear that "there may be complete preemption subject matter jurisdiction over a claim that falls within ERISA § 502(a) even though that claim is not conflict-preempted by ERISA § 514." *Id.* at 440.[11] In *Woods v. Texas Aggregates, L.L.C.*, 459 F.3d 600 (5th Cir. 2006), the Fifth Circuit applied this new approach, holding that "[§] 502(a) may provide for preemption where § 514(a) is inapplicable by operation of one of § 514's exemptions from preemption." *Id.* at 603. The panel did note that it was not aware of any case "in which § 502(a) preemption was found to be proper where the state law claims did not 'relate to' the ERISA plan under our § 514(a) analysis." *Id.* It reasoned that, because "[s]ection 502(a) encompasses claims to 'recover,' 'enforce,' or 'clarify' that which is owed an employee under an ERISA plan[,] [t]he set of claims described by § 502(a) will rarely, if ever, differ from the set of claims that 'relate to' an ERISA plan under § 514(a)." *Id. Woods* logically observes that virtually all § 502 state-law claims will satisfy the "relate to" language of § 514, even if some of

_____

[11]The pre-*Arana* history is helpful, however, in that it indicates the Fifth Circuit's recognition that a completely preempted state-law claim under § 502 may also meet the statutory requirements for preemption under § 514, even if such overlap is no longer required for a court to have jurisdiction.

them are exempted under that section.

                                    C

Having explained the basic principles of preemption under §§ 502 and 514, the court now turns to LINA's motion to dismiss.

                                    1

In ruling on a motion to dismiss for failure to state a claim, the court construes the complaint (here, plaintiffs' state-court petition) in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). To survive the motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d

333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (internal citation omitted)).   Furthermore, "matters incorporated by reference or integral to the claim . . . may be considered by the district judge without converting the [12(b)(6)] motion into one for summary judgment."   5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 376 (3d ed. 2004).   "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[12]   *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

2

The court must first determine whether the Policy qualifies as an ERISA "employee welfare benefit plan."   *See, e.g., Yates v. Fleetwood Transp. Servs., Inc.*, 2007 WL 3146369, at *3 (W.D. La. Oct. 26, 2007) ("The initial inquiry of course, is whether the subject plan is an ERISA plan.   If not then ERISA does not apply[.]").   An "'employee welfare benefit plan' . . . mean[s] any plan, fund, or program . . . established or maintained by an

_____

[12]Plaintiffs stated in their petition that the Policy "forms the basis of this lawsuit," but they did not attach a copy of the Policy to the petition. *See* Ps. Pet. 2.   The court may refer to the Policy in deciding this Rule 12(b)(6) motion, however, because a copy is attached to LINA's motion to dismiss, it is referred to in plaintiffs' petition, and it forms the basis of plaintiffs' claims. *See In re Katrina Canal Bridges Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

- 14 -

employer or by an employee organization . . . for the purpose of
providing for its participants or their beneficiaries, through the
purchase of insurance or otherwise . . . benefits in the event of
sickness, accident, disability [or] death." 29 U.S.C. § 1002(1).
To qualify, a plan must (1) exist, (2) not fall within the safe
harbor provisions established by the Department of Labor, and (3)
satisfy the ERISA requirements of establishment and maintenance by
an employer with intent to benefit employees. *House v. Am. United
Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007).

3

        To determine whether an ERISA plan exists, courts in the Fifth
Circuit ask whether "a reasonable person could ascertain the
intended benefits, beneficiaries, source of funding, and procedures
for receiving benefits." *McNeil v. Time Ins. Co.*, 205 F.3d 179,
189 (5th Cir. 2000). "The Fifth Circuit has routinely found
employers' group insurance policies to constitute an employee
benefit plan as provided for under ERISA." *Thompson v. Unum Life
Ins. Co. of Am.*, 2005 WL 722717, at *5 (N.D. Tex. Mar. 29, 2005)
(Boyle, J.). In this case, the documentation for the Policy
demonstrates that it was purchased by John's employer,[13] for the

_____

        [13]Plaintiffs apparently question whether the entity listed as
"subscriber" on the Policy, "Mueller Group, Inc.," D. July 8, 2009
App. 7, was John's employer. They maintain that they have never
heard of "Mueller Group, Inc." and have no reason to believe that
it was John's employer or was related to Anvil International,
Incorporated in any way. Ps. Br. 2. But as LINA points out in its
reply brief, this claim is especially surprising given that——among

benefit of its employees, provides the amount of the benefits, and identifies the beneficiaries. *See* D. July 8, 2009 App. 7, 8-12, 22-23, and 31. Therefore, a reasonable person could ascertain that a plan exists.

4

The second element addresses whether the ERISA plan was subject to any of the safe harbor provisions established by the Department of Labor. *See House*, 499 F.3d at 448. These safe harbor provisions exclude any plan from ERISA if "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan." *Id*. at 449 (quoting 29 C.F.R. § 2510.3-1(j)). "The plan must meet all four criteria to be exempt from ERISA." *House*, 499 F.3d at 449.

The Policy states that "[t]he cost of the coverage is paid by the Subscriber and the Employee." D. July 8, 2009 App. 10. The subscriber of the Policy is Mueller Group, Inc., John's employer. Thus John's employer did contribute to the plan, failing the first

---

other evidence—the beneficiary designation form in the Policy on which plaintiffs' names are listed is printed on "Mueller Group, Inc." letterhead. *See* D. July 8, 2009 App. 31. LINA offers additional confirmation in its reply that Mueller was, in fact, John's employer, and plaintiffs provide no reason to question this conclusion. *See* D. Reply Br. 3-4. As noted above, the court can consider documents incorporated by reference into the petition in considering the motion to dismiss. The facts thus show that Mueller was John's employer.

safe harbor requirement.

In addition, it does not appear that Mueller's role was limited to collecting premiums and remitting them to the insurer. In *Hansen v. Continental Insurance Co.*, 940 F.2d 971 (5th Cir. 1991), it was determined that a plan fell outside the safe harbor when the employer "accepted claim forms from employees and submitted them to the insurer." *Id.* at 977. In *Thompson* the court held that the safe harbor provisions were not satisfied when the employer "was the administrator of the plan, it calculated premiums due from its partners, it negotiated policy terms, and was free to terminate the policy." *Thompson*, 2005 WL 722717, at *6. The record in the present case shows that Mueller's role was not "limited to merely serving as a conduit for . . . premiums." *House*, 499 F.3d at 449. Mueller is listed as the subscriber on the Policy, retained the right to terminate the Policy, and submitted beneficiary and claim documents to LINA on behalf of John and his beneficiaries. D. July 8, 2009 App. 7, 26, 30, and 33. For these reasons, the safe harbor provisions are not met and do not prevent the Policy from qualifying as an ERISA plan.

5

The third element focuses on whether the plan was "establish[ed] or maintain[ed] by an employer intending to benefit employees." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). "The key issue . . . [is] the existence of an employer-

- 17 -

employee-plan relationship." *Megallon-Laffey v. Sun Life Assurance Co.*, 2001 WL 1082414, at *3 (N.D. Tex. Aug. 28, 2001) (Fitzwater, J.).  As the above analysis makes clear, this requirement is met here.  Mueller was the subscriber on the Policy, which was acquired to benefit Mueller employees, and Mueller acted as an intermediary between the employees and LINA.  The court holds that the third element is satisfied.

6

Plaintiffs do not allege any facts that are contrary to the court's conclusions.  They only assert in their motion to remand that they "do not concede any of them."  Ps. Mot. Remand 3. Because the Policy itself demonstrates all the necessary facts, the court holds that the Policy is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002.

D

The court now turns to LINA's argument that § 502 completely preempts plaintiffs' breach of contract claim.  Plaintiffs allege in their state court petition that LINA "materially breached its contract with Plaintiffs[] by refusing to pay any group term accidental death insurance benefits, to which Plaintiffs[] are entitled under the insurance policy made the basis of the lawsuit." Ps. Pet. 3.  Plaintiffs sue for "recovery of expectation damages in contract, including policy benefits plus interest and attorney's fees."  *Id.*

- 18 -

"[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health*, 542 U.S. at 210. "Where a state law claim merely duplicates the remedies provided in § 502(a), the state law claim is completely preempted and will be recharacterized as a federal claim under § 502(a)." *Woods*, 459 F.3d at 603. Section 502 authorizes private suits "brought by a participant or beneficiary to recover benefits due him under the terms of his plan."

The court concludes that plaintiffs' breach of contract claim is completely preempted under ERISA § 502(a)(1)(B), because it seeks to recover benefits allegedly due plaintiffs under the terms of the ERISA plan. For example, in *Young v. Prudential Ins. Co. of America*, 2007 WL 1234929 (S.D. Tex. Apr. 24, 2007), the plaintiff brought, *inter alia*, a breach of contract claim "based on the defendant's alleged denial of benefits due under an ERISA-governed life insurance contract." *Id.* at *3. The court held that the claim could have been brought under § 502, duplicated the relief provided by ERISA, and was preempted. *Id.* The Fifth Circuit has recognized that a breach of contract claim seeking benefits due under an ERISA-governed insurance policy is completely preempted under § 502. *Ellis v. Liberty Life Ins. Co. of Am.*, 394 F.3d 262,

276 n.34 (5th Cir.2004).   Although it is not entirely clear from their brief, plaintiffs appear to concede that, if the insurance policy is found to be subject to ERISA, the breach of contract claim is completely preempted.   In their motion to remand, they acknowledge that "plaintiffs' breach of contract claim would fall 'under subsection (a)(1)(B)' [of § 205] because they are beneficiaries who have sued 'to recover benefits due to' them 'under the terms of' a 'plan' alleged to exist by Defendant.   29 U.S.C. § 1132(a)(1)(B)."   Ps. Mot. Remand 6.

When a claim is subject to complete preemption under ERISA, the court typically allows the plaintiff to replead and assert a claim under § 502.   *See, e.g., Drew v. Life Ins. Co. of N. Am.*, 2009 WL 1856604, at *1 (N.D. Tex. June 29, 2009) (Fitzwater, C.J.) ("[T]he court granted the motion to dismiss, but it also granted [plaintiff] leave to re-plead to assert any available claims under ERISA and any pendent state-law claims that might be maintained under the court's supplemental jurisdiction.").   Therefore, the court grants plaintiffs leave to amend their petition to reflect the recharacterization of the state-law breach of contract claim as a federal claim under ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B).

E

LINA next contends that all of plaintiffs' state-law claims are subject to conflict preemption under ERISA § 514.

The court will not consider whether plaintiffs' breach of contract claim is preempted under § 514.  As the court explains above, preemption under § 502(a) is not dependent on a finding of conflict preemption under § 514.  Additionally, conflict preemption will not displace a claim properly subject to complete preemption. There is therefore no need to ask whether the breach of contract claim is also subject to conflict preemption.  Plaintiffs' other claims allege violations of Tex. Ins. Code Ann. §§ 542.058, 542.003(4), and 541.060(a) (all of which were formerly codified at Tex. Ins. Code Ann. Articles 21.21 and 21.55), breach of the duty of good faith and fair dealing, and violations of the DTPA.  LINA moves to dismiss these claims as preempted under § 514.

"In analyzing preemption issues under § 514(a), we first ask whether the benefit plan at issue constitutes an ERISA plan; if it is, we must then determine whether the state law claims 'relate to' the plan." *Woods*, 459 F.3d at 602 (quoting § 514).  Having determined above that the Policy qualifies as part of an ERISA plan, the court turns to whether the state-law claims "relate to" the plan.

There is a two-part test for determining when state-law claims "relate to" an ERISA plan:

- 21 -

> (1) whether the state law claims address areas
> of exclusive federal concern, such as the
> right to receive benefits under the terms of
> an ERISA plan; and (2) whether the claims
> directly affect the relationship among the
> traditional ERISA entities-the employer, the
> plan and its fiduciaries, and the participants
> and beneficiaries.

*Id.* "ERISA includes expansive preemption provisions, see [§ 514], which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health*, 542 U.S. at 208 (internal quotations omitted). While ERISA's preemptive scope is broad, it still requires that the state action not merely "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n.21 (1983).

Considering the specific claims at issue, the court holds that each is preempted under § 514. The Fifth Circuit and district courts within this circuit have repeatedly held that state-law claims of the type plaintiffs assert in this case are subject to conflict preemption. *See, e.g., Ellis*, 394 F.3d at 278 ("claims grounded in violations of [Tex. Ins. Code. Ann. Arts. 21.21 and 21.55] are preempted by ERISA"); *id.* at 276 ("ERISA preempts [plaintiff's] common law claim for breach of the duties of good faith and fair dealing"); *Menchaca*, 2009 WL 2512859, at *3-*4 (upholding dismissal of claims alleging Insurance Code and duty of good faith and fair dealing violations); *Ramirez v. Inter-Cont'l*

- 22 -

*Hotels*, 890 F.2d 760, 763-64 (5th Cir. 1989) (stating "[w]e thus join three of our sister circuits and numerous district courts in holding that ERISA preempts state statutes that provide a private right of action for the improper handling of insurance claims," and dismissing DTPA and Insurance Code claims); *Richardson v. Aetna Life Ins. Co.*, 2001 WL 1661699, at *5 (N.D. Tex. Dec. 26, 2001) (Boyle, J.) ("[T]he Fifth Circuit has found claims brought under Texas law . . .to be preempted by ERISA—breach of contract, . . . breach of the duty of good faith and fair dealing, . . . violation of the [DTPA], and violation of Article[s] 21.21 [and 21.55] of the Texas Insurance Code."). The court holds that plaintiffs' remaining claims are subject to conflict preemption under § 514, and accordingly grants LINA's motion to dismiss those claims.[14]

IV

LINA also asserts that plaintiffs' claims fail because they are conflict-preempted under ERISA § 514 and because plaintiffs failed to plead exhaustion of remedies, as ERISA requires. *See*, *e.g.*, *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993). The court declines to dismiss plaintiffs' case based on their failure to plead exhaustion.

_____

[14]Although neither side has advanced this position in the briefing, it is conceivable that some of plaintiffs' other state-law claims (i.e., other than the breach of contract claim) may be subject to complete preemption because they seek to duplicate the enforcement remedy available under ERISA. The court need not decide this question in resolving the present motions to remand and dismiss.

- 23 -

First, although exhaustion is relevant now that plaintiffs' breach of contract claim has been recast under ERISA, plaintiffs filed this lawsuit in state court, based on state law.  They had no reason at that time to plead exhaustion of remedies under ERISA.

Second, LINA's discussion of exhaustion amid its assertion of § 514 preemption is misplaced.  Exhaustion of administrative remedies is relevant to a claim pleaded (or preempted) under § 502.  Once the court has determined that mere conflict preemption under § 514 applies to a claim, that claim is subject to dismissal.  There is no need to address exhaustion, because preemption under § 514 disposes of the claim.

Although the court denies LINA's motion to dismiss to the extent that it seeks dismissal based on ERISA's exhaustion requirement, the court reminds plaintiffs that, should they choose to file an amended complaint that pleads a claim under ERISA § 502(a)(1)(B), it will be necessary that they satisfy the exhaustion of remedies pleading requirement.  Exhaustion is inapplicable only as to the claims preempted under § 514 alone. Furthermore, it does not appear that it will be difficult for plaintiffs to meet this requirement.  LINA admitted in a pre-suit letter that "all administrative levels of appeal have been exhausted and we cannot honor any further appeals on this claim," but plaintiffs could "bring legal action regarding your claim under the ERISA section 502(a)."  D. July 8, 2009 App. 47.

*     *     *

Accordingly, for the foregoing reasons, the court denies plaintiffs' motion to remand, and it grants in part and denies in part LINA's motion to dismiss. Plaintiffs are hereby granted 30 days from the date of this memorandum opinion and order to file an amended complaint that pleads a viable claim under ERISA § 502(a)(1)(B).

**SO ORDERED.**

October 7, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE